UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PASTOR NESTOR VICTOR, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   -v-<br><br>SAM'S DELI GROCERY CORP. (D/B/A SAM'S DELI), SAMEER ALI, WALID MOHAMED SEIDI, AND LOU DOE,<br><br>                Defendants. | CIVIL ACTION NO.: 19 Civ. 2965 (SLC)<br><br>**OPINION & ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I.  INTRODUCTION

On March 3, 2021, Plaintiff Pastor Nestor Victor ("Nestor") filed this putative collective action under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq., New York Labor Law ("NYLL") §§ 190 et seq. and 650 et seq., and New York's Wage Theft Prevention Act, NYLL § 195 et seq. ("WTPA"), seeking payment of unpaid wages and related relief against Defendants Sam's Deli Grocery Corp. (d/b/a Sam's Deli) (the "Deli"), Sameer Ali ("Ali"), Walid Mohamed Seidi ("Seidi"), and Lou Doe ("Doe"), the Deli, Ali, Seidi, and Doe, "Defendants").  (ECF No. 1 (the "Complaint")).  Nestor alleges that during his employment at the Deli, Defendants failed to pay him proper minimum, overtime, and spread-of-hours wages, and failed to keep adequate records of his hours worked and provide him with required wage notices and statements.  (Id. ¶¶ 5–8, 45–49, 64–89).  The Deli and Seidi ("Defaulting Defendants") appeared and defended against

Nestor's claims,[1] but after their counsel withdrew and they failed to respond to the Court's orders, the Clerk of Court entered certificates of default against them, and Nestor filed a motion for default judgment (the "Motion"), accompanied by his counsel's declaration and exhibits (the "Sojo Declaration"), his declaration (the "Nestor Declaration"), and a damages computation ("Nestor's Computation"), with the Motion, Sojo Declaration, and Nestor Declaration, the "Damages Submission")).  (ECF Nos. 34–35; 47; 86; 90; 100–03; 103-1 – 103-7).

For the following reasons, Nestor's Motion is GRANTED IN PART and DENIED IN PART, and the Court awards him the following:

(1)  $169,258.54 in damages against Defaulting Defendants, comprised of:  (i) $79,629.27 in unpaid overtime wages; (ii) $79,629.27 in liquidated damages; and (iii) $10,000.00 in statutory damages;

(2)  post-judgment interest pursuant to 28 U.S.C. § 1961;

(3)  attorneys' fees in the amount of $5,137.50;

(4)  costs in the amount of $400; and

(5)  pursuant to NYLL § 198(4), if any amounts remain unpaid on the expiration of 90 days following issuance of judgment, or 90 days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by 15%.

---

[1] Victor voluntarily dismissed his claims against Ali and Doe, and therefore, they are not the subject of this Opinion & Order.  (ECF Nos. 50–51).

## II. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

Unless otherwise indicated, the Court draws the facts from the Complaint and the Damages Submission (<u>see</u> § II.B <u>infra</u>).  (ECF Nos. 1; 102–03; 103-1 – 103-7).  Given Defaulting Defendants' default, the Court accepts as true all well-pleaded factual allegations in the Complaint, except as to damages.  <u>See</u> <u>City of N.Y. v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (quoting <u>Vt. Teddy Bear Co. v. 1-800 Beargram Co.</u>, 373 F.3d 241, 246 (2d Cir. 2004)); <u>Whitehead v. Mix Unit, LLC</u>, No. 17 Civ. 9476 (VSB) (JLC), 2019 WL 384446, at *1 (S.D.N.Y. Jan. 31, 2019).

Defendants operated the Deli, located on 7 East 170th Street in the Bronx.  (ECF Nos. 1 ¶¶ 2–3, 16–20; 103-4 ¶ 3).  Defendants had the power to hire and fire Nestor, control his terms and conditions of employment, and determine the rate and method of his compensation.  (ECF No. 1 ¶¶ 24–28).  Defendants were engaged in interstate commerce; for example, "numerous items that were used in the [D]eli on a daily basis [were] goods produced outside of the State of New York."  (<u>Id.</u> ¶ 30; <u>see</u> ECF No. 103-4 ¶ 7).

From July 2011 until October 2014, and from December 2017 until February 2019, Nestor worked at the Deli as a sandwich maker, but also had other responsibilities including food preparation and taking customers' orders.  (ECF Nos. 1 ¶ 1, 4, 14, 33–44; 103-4 ¶¶ 4–5).  During his employment, Nestor regularly worked more than 40 hours per week.  (ECF Nos. 1 ¶ 37; 103-4 ¶ 9).  From April 2013 through October 2014, and from December 2017 through February 2018, Nestor worked from 7:00 a.m. until 5:00 p.m., six days per week, totaling 60 hours per week.

(ECF Nos. 1 ¶ 38; 103-4 ¶ 10).  From March 2018 through February 2019, Nestor worked from 5:00 p.m. until 3:00 a.m. three days per week, and from 5:00 p.m. until 6:00 a.m. three days per week, totaling 69 hours per week.  (ECF Nos. 1 ¶ 39; 103-4 ¶ 11).

Defendants paid Nestor his wages in cash in the following amounts:  from April 2013 until July 2014, $500 per week; from August 2014 until October 2014, $600 per week; from December 2017 until February 2018, $700 per week; and from March 2018 until February 2019, $750 per week.  (ECF Nos. 1 ¶¶ 40–44, 54; 103-4 ¶¶ 12–16).  Defendants did not give Nestor meal breaks and neither required him to keep track of his time nor used any timekeeping device to record his hours.  (ECF No. 1 ¶¶ 45–46).

Defendants did not provide Nestor with accurate wage statements.  (ECF Nos. 1 ¶¶ 48, 59; 103-4 ¶ 18).  Defendants did not provide Nestor any notice, posted or otherwise, in English or Spanish (his primary language) regarding overtime and wages under the FLSA and NYLL.  (ECF Nos. 1 ¶¶ 47, 49, 55, 60; 103-4 ¶ 19).

**B.  Procedural Background**

On April 3, 2019, Nestor filed the Complaint asserting claims under the FLSA, NYLL, and WTPA.  (ECF No. 1 ¶¶ 64–89).  On June 17, 2019, Nestor served the Summons and Complaint on the Deli through its authorized agent, the New York Secretary of State, and on Ali, Seidi, and Doe through service on Ali Abdul Seidi, their co-worker, at the Deli.  (ECF Nos. 12; 13; 15; 16).  After Defendants failed to appear, the Clerk of the Court entered certificates of default against Defendants.  (ECF Nos. 23–26).  Nestor moved by order to show cause for entry of default judgment.  (ECF Nos. 27–28).  On August 1, 2019, the Honorable Valerie E. Caproni issued an order directing Defendants to show cause why a default judgment should not be entered against

them.  (ECF No. 29 (the "OTSC")).  After Nestor served the OTSC on Defendants, the Deli and Seidi appeared through counsel, Harold H. Weisberg ("Weisberg").  (ECF Nos. 30–36).  After several extensions and adjournments, on January 31, 2020, Judge Caproni entered a case management plan setting a fact discovery deadline of May 5, 2020.  (ECF No. 45).  On February 13, 2020, the Deli and Seidi filed their Answer.  (ECF No. 47).  On February 14, 2020, Nestor voluntarily dismissed his claims against Ali and Doe.  (ECF Nos. 50–51).

After Defaulting Defendants failed to respond to Nestor's discovery requests, Judge Caproni granted Nestor's request for an extension of the fact discovery deadline to May 26, 2020, and warned Defaulting Defendants that she would consider sanctions if they could not "show good cause for failing to respond to discovery requests served three months ago."  (ECF No. 53). After Judge Caproni referred the matter for settlement, the undersigned scheduled, and rescheduled (three times) a settlement conference.  (ECF Nos. 54–59, 63).  On July 17, 2020, the Court directed Defaulting Defendants to either retain new counsel, because the Deli could not appear pro se, or for Seidi to notify the Court by August 17, 2020 if he intended to proceed pro se.  (ECF No. 59).  After Seidi failed to do so, the Court directed the parties to file a joint letter by August 31, 2022, advising the Court whether Weisberg planned to continue representing Defaulting Defendants or planned to withdraw, and whether new counsel would appear.  (ECF No. 60).  On August 31, 2020, Enrique A. Leal ("Leal") appeared on behalf of Defaulting Defendants.  (ECF No. 61).  On September 30, 2020, the Court held a settlement conference at which Defaulting Defendants' representative, David Nasser, and counsel appeared, and during which the parties reached an agreement in principle.  (ECF min. entry Sept. 30, 2020).

On October 2, 2020, Judge Caproni notified the parties that they could not dismiss the action with prejudice unless the Court or Department of Labor ("DOL") approved any settlement, and directed the parties to file a letter requesting court approval or providing proof of DOL approval.  (ECF No. 68).  Judge Caproni extended the parties' deadline to submit their request for settlement approval.  (ECF Nos. 70).  On November 13, 2020, the parties consented to Magistrate Judge jurisdiction for all purposes.  (ECF No. 75).  On November 24, 2020, the Court held a telephone status conference with the parties, at which Defaulting Defendants' counsel appeared. (ECF min. entry Nov. 24, 2020).

Nine months passed with no substantive action by the parties, and on August 9, 2021, the Court directed the parties to file a status report.  (ECF No. 81).  On August 13, 2021, the parties reported that Leal intended to file a motion to withdraw as counsel for Defaulting Defendants, and the Court set a deadline of September 2, 2021 for Leal's motion.  (ECF Nos. 83–84).  On September 2, 2021, Leal filed a letter-motion in which he and Weisberg, who became ill during the case, sought to withdraw from representing Defaulting Defendants, who had not responded to, cooperated with, or paid Leal and Weisberg since at least August 2020.  (ECF No. 85).  On September 3, 2021, the Court granted the motion to withdraw, reminding the Deli that it could not appear pro se and setting a deadline of October 4, 2021, for the Deli to retain new counsel and for new counsel to enter a notice of appearance.  (ECF No. 86 at 2 (the "Sept. 3 Order")).  The Court warned Defaulting Defendants that the failure to respond could lead to entry of a certificate of default and a default judgment.  (Id.)  The Court directed Leal to mail a copy of the Sept. 3 Order to Defaulting Defendants, and the Clerk of the Court mailed a copy of the Sept. 3 Order to Seidi.  (Id.; ECF min. entry Sept. 3, 2021).

After Defaulting Defendants failed to comply with the Sept. 3 Order, on October 15, 2021, the Court ordered Seidi to file a letter stating whether he would retain counsel or appear pro se, and ordered the Deli to appear through counsel by November 5, 2021.  (ECF No. 90 (the "Oct. 15 Order")).  The Clerk of the Court mailed the Oct. 15 Order to Defaulting Defendants.  (ECF min. entry Oct. 15, 2021).  After Defaulting Defendants failed to respond to the Oct. 15 Order, on April 11, 2022, the Court directed Nestor to request certificates of default as to Defaulting Defendants and file a motion for default judgment.  (ECF No. 95).

On April 14, 2022, the Clerk of the Court entered a Certificate of Default as to Seidi, and on April 15, 2022, as to the Deli.  (ECF Nos. 100–01).  On April 18, 2022, Nestor filed the Motion, along with the Damages Submission.  (ECF Nos. 102–04).  On April 19, 2022, the Court ordered Defaulting Defendants to respond to the Motion by May 20, 2022, warning them that if they failed to respond or contact the Court, the Court would decide the Motion based on Nestor's Damages Submission alone.  (ECF No. 105 (the "Apr. 19 Order")).  Nestor filed proof of service of the Motion, Damages Submission, and Apr. 19 Order on Defaulting Defendants.  (ECF No. 106). To date, Defaulting Defendants have not responded to the Motion or otherwise contacted the Court.

## III.  DISCUSSION

### A.  Legal Standards

#### 1.  Obtaining a Default Judgment

A party seeking a default judgment must follow the two-step procedure set forth in Federal Rule of Civil Procedure 55.  See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 186–87 (2d Cir. 2015); Fed. R. Civ. P. 55.  First, under

Rule 55(a), where a party has failed to plead or otherwise defend in an action, the Clerk of the Court must enter a certificate of default.  <u>See</u> Fed. R. Civ. P. 55(a).  Second, after entry of the default, if the party still fails to appear or move to set aside the default, the Court may enter a default judgment.  <u>See</u> Fed. R. Civ. P. 55(b).  Whether to enter a default judgment lies in the "sound discretion" of the trial court.  <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95 (2d Cir. 1993).  Because a default judgment is an "extreme sanction" that courts are to use as a tool of last resort, <u>Meehan v. Snow</u>, 652 F.2d 274, 277 (2d Cir. 1981), the district court must "carefully balance the concern of expeditiously adjudicating cases, on the one hand, against the responsibility of giving litigants a chance to be heard, on the other."  <u>Fermin v. Las Delicias Peruanas Rest., Inc.</u>, 93 F. Supp. 3d 19, 29 (E.D.N.Y. Mar. 19, 2015) (citing <u>Enron</u>, 10 F.3d at 96).

       In considering whether to enter a default judgment, district courts are "guided by the same factors [that] apply to a motion to set aside entry of a default."  <u>First Mercury Ins. Co. v. Schnabel Roofing of Long Is., Inc.</u>, No. 10 Civ. 4398 (JS) (AKT), 2011 WL 883757, at *1 (E.D.N.Y. Mar. 11, 2011).  "These factors include:  (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense."  <u>J & J Sports Prods. Inc. v. 1400 Forest Ave. Rest. Corp.</u>, No. 13 Civ. 4299 (FB) (VMS), 2014 WL 4467774, at *4 (E.D.N.Y. Sept. 10, 2014) (citing <u>Swarna v. Al-Awadi</u>, 622 F.3d 123, 142 (2d Cir. 2010)); <u>see</u> <u>Enron</u>, 10 F.3d at 96 (noting that "[a]lthough the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment because the concepts of finality and litigation repose are more deeply implicated in the latter action") (internal citation omitted).

## 2. **Determining Liability**

A defendant's default is deemed "a concession of all well-pleaded allegations of liability," Rovio Entm't, Ltd. v. Allstar Vending, Inc., 97 F. Supp. 3d 536, 545 (S.D.N.Y. 2015), but a default "only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendants." Gesualdi v. Quadrozzi Equip. Leasing Corp., 629 F. App'x 111, 113 (2d Cir. 2015). The Court must determine "whether the allegations in [the] complaint establish the defendants' liability as a matter of law." Id. If the Court finds that the well-pleaded allegations establish liability, the Court then analyzes "whether plaintiff has provided adequate support for [his requested] relief." Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008). If, however, the Court finds that the complaint fails to state a claim on which relief may be granted, the Court may not award damages, "even if the post-default inquest submissions supply the missing information." Perez v. 50 Food Corp., No. 17 Civ. 7837 (AT) (BCM), 2019 WL 7403983, at *4 (S.D.N.Y. Dec. 4, 2019), adopted by, 2020 WL 30344 (S.D.N.Y. Jan. 2, 2020).

## 3. **Determining Damages**

Once liability has been established, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Am. Jewish Comm. v. Berman, No. 15 Civ. 5983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (citation omitted), adopted by, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). A plaintiff "bears the burden of establishing [its] entitlement to recovery and thus must substantiate [its] claim with evidence to prove the extent of damages." Dunn v. Advanced Credit Recovery Inc., No. 11 Civ. 4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar. 1, 2012). The evidence the plaintiff submits must be admissible. See Poulos v. City of N.Y., No. 14 Civ. 3023 (LTS) (BCM), 2018 WL 3750508, at *2

(S.D.N.Y. July 13, 2018), adopted by, 2018 WL 3745661 (S.D.N.Y. Aug. 6, 2018); see also House v. Kent Worldwide Mach. Works, Inc., 359 F. App'x 206, 207 (2d Cir. 2010) (summary order) ("[D]amages must be based on admissible evidence.").  If the documents the plaintiff has submitted provide a "sufficient basis from which to evaluate the fairness of" the requested damages, the Court need not conduct an evidentiary hearing.  Fustok v. ContiCommodity Servs. Inc., 873 F.2d 38, 40 (2d Cir. 1989); see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997) (noting that a court may determine appropriate damages based on affidavits and documentary evidence "as long as [the court has] ensured that there [is] a basis for the damages specified in the default judgment") (internal citation omitted).

When the employer's payroll records are inaccurate or incomplete, "an employee has carried out his [or her] burden if he [or she] proves" enough for the court to make a "just and reasonable inference" that he or she "has in fact performed work for which he [or she] was improperly compensated and if he [or she] produces sufficient evidence to show the amount and extent of that work[.]"  Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) (citation omitted).  The Court may credit a plaintiff's "recollections regarding [her] hours and pay in conducting [the] inquest."  Coley v. Vannguard Urb. Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *7 (E.D.N.Y. Mar. 27, 2018), as amended Mar. 29, 2018.  The Court "must ensure that [her] approximations and estimates are reasonable and appropriate."  Id.  Ultimately, the default judgment the Court enters "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c); see Silge v. Merz, 510 F.3d 157, 160 (2d Cir. 2007) (limiting damages to those specified in demand in complaint "ensures

that a defendant who is considering default can look at the damages clause, satisfy him [or her]self that he [or she] is willing to suffer judgment in that amount, and then default without the need to hire a lawyer"); Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC, No. 16 Civ. 1318 (GBD) (BCM), 2018 WL 4760345, at *1 (S.D.N.Y. Sept. 28, 2018) (holding that plaintiff could not recover damages for unalleged claims against defaulted defendant).

**B.  Default Judgment**

In accordance with the two-step process in Rule 55, the Clerk of the Court entered certificates of default as to both Defendants, and Defaulting Defendants have failed to re-appear, or otherwise challenge the default.  (ECF Nos. 100–01).  The Court's analysis of the relevant factors set forth above reveals first that the Court can infer, from Defendants' failure to submit any written reply to Nestor's Damages Submission after having been properly served, that their default was willful.  See Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding that a failure to respond to a complaint and subsequent motion for default judgment "indicate[s] willful conduct").  Second, delaying entry of a default judgment might prejudice Nestor.  See Inga v. Nesama Food Corp., No. 20 Civ. 909 (ALC) (SLC), 2021 WL 3624666, at *6 (S.D.N.Y. July 30, 2021) (finding that FLSA plaintiff would "be prejudiced in the absence of a default judgment, not only by the delay in resolving this action, but by his inability to recover from another source for the lost wages and other losses he sustained while working for Defendants"), adopted by, 2021 WL 3617191 (S.D.N.Y. Aug. 16, 2021).  Third, despite initially answering the FAC, Defendants have failed to respond to the Court's orders or continue to appear and defend in this action.  Thus, because the

requirements of Rule 55 are satisfied and the relevant factors weigh in Nestor's favor, the Court

finds that entry of default judgment is proper in this case.

### C. Liability

#### 1. Jurisdiction and Venue

As a threshold matter, the Court has subject matter jurisdiction over this action.  Nestor

sues under a federal statute—the FLSA—that gives rise to the Court's subject matter jurisdiction

under 28 U.S.C. § 1331.  The Court may exercise supplemental jurisdiction over his NYLL claims

because they arise out of the same facts and circumstances as his FLSA claims.  See Perez, 2019

WL 7403983, at *5.

The Court also has personal jurisdiction over Defendants, which is "a necessary

prerequisite to entry of a default judgment."  Reilly v. Com., No. 15 Civ. 05118 (PAE) (BCM), 2016

WL 6837895, at *2 (S.D.N.Y. Oct. 31, 2016) (quoting Sheldon v. Plot Com., No. 15 Civ. 5885 (CBA)

(CLP), 2016 WL 5107072, at *6 (E.D.N.Y. Aug. 26, 2016), adopted by, 2016 WL 5107058 (E.D.N.Y.

Sept. 19, 2016)).  The Court has personal jurisdiction over the Deli, which is a New York

corporation that maintains its principal place of business in New York City.  (ECF No. 1 ¶¶ 2, 17).

The Court also has personal jurisdiction over Seidi, who was an owner, officer, or agent of the

Deli and possessed operational control over the Deli.  (Id. ¶¶ 2, 19).  Nestor properly served both

Defendants.  (ECF Nos. 12; 15).  See Fed. R. Civ. P. 5(b)(2).

Venue is proper because the Deli, where Nestor worked, is in this District, see 28 U.S.C.

§ 1391(b)(1), and because the events or omissions giving rise to his claims occurred in this

District.  See 28 U.S.C. § 1391(b)(2).  (ECF No. 1 ¶¶ 2, 4, 16–17, 21).

## 2. **Statute of Limitations**

Under the NYLL, the statute of limitations is six years.  See NYLL § 198(3).  Under the FLSA, the statute of limitations is two years, or, if the violations were "willful", three years.  See 29 U.S.C. § 255(a); see also McLaughlin v. Richland Shoe Co., 486 U.S. 128, 129 (1988).  An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited[.]" McLaughlin, 486 U.S. at 133.  Although plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief.  See Ni v. Bat-Yam Food Servs. Inc., No. 13 Civ. 7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).

Here, Nestor worked at the Deli from July 2011 until October 2014, and from December 2017 until February 2019, and filed the Complaint on April 3, 2019.  (ECF Nos. 1; 103-4 ¶ 4).  The only period for which he seeks recovery, however, is entirely within the NYLL's six-year statute of limitations, although less than half would be covered by the FLSA's two-year statute of limitations.[2]  (ECF Nos. 1 ¶¶ 38–44 (alleging hours worked from April 2013 until October 2014

---

[2] Approximately half of Victor's employment would be covered by FLSA's three-year statute of limitations for willful violations.  To support his contention that Defendants' conduct was willful, Victor alleged that Defendants' failure to pay him full compensation and keep proper records was willful.  (ECF No. 1 ¶¶ 53, 58, 69, 73, 82).  In Whiteside v. Hover-Davis, Inc., the Second Circuit held that "a plaintiff at the pleadings stage must allege facts that give rise to a plausible inference of willfulness for the three-year exception to the FLSA's general two-year statute of limitations to apply." 995 F.3d 318, 320 (2d Cir. 2021). "The Whiteside Court did not address what impact, if any, its ruling would have when a defendant defaults and willfulness is therefore inferred as a matter of law assuming it has been pled." Baez v. RCO Restoration Corp., No. 20 Civ. 1066 (VSB) (JLC), 2021 WL 1847379, at *2 n.3 (S.D.N.Y. May 10, 2021), adopted by, 2021 WL 4077944 (S.D.N.Y. Sept. 8, 2021); see Wicaksono v. XYZ 48 Corp., No. 10 Civ. 3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011) (finding that, "[b]ecause the defendant defaulted and the complaint alleges that all of the violations were undertaken 'knowingly, intentionally and willfully,' plaintiffs [were] entitled to a finding that the defendant's conduct was willful, and the three year statute of limitations will apply"), adopted by, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).  Because Victor is "being awarded damages under New York Labor Law, which has a six-year statute of limitations, this issue need not be further considered in this case." Baez, 2021 WL 1847379, at *2 n.3; see Wen v. Hair Party 24 Hours

and from December 2017 until February 2019)).  Because the NYLL provides for equal or greater relief than the FLSA, the Court recommends awarding Nestor damages under the NYLL.  <u>See</u> <u>Schalaudek v. Chateau 20th St. LLC</u>, No. 16 Civ. 11 (WHP) (JLC), 2017 WL 729544, at *5 (S.D.N.Y. Feb. 24, 2017); <u>Suriel v. Cruz</u>, No. 20 Civ. 8442 (VSB) (SLC), 2022 WL 1750232, at *9 (S.D.N.Y. Jan. 10, 2022), <u>adopted by</u>, 2022 WL 1751163 (May 31, 2022).

### 3. **FLSA and NYLL Elements**

To state a claim for wages under the FLSA, a plaintiff must allege that:  (1) he was the defendant's employee; (2) his work involved interstate activity; and (3) he worked for hours for which he did not receive minimum or overtime wages.  <u>See</u> <u>Tackie v. Keff Enter., Inc.</u>, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *2 (S.D.N.Y. Sept. 16, 2014).  A wage-and-hour claim under the NYLL involves a similar analysis, "except that the NYLL does not require plaintiffs to show a nexus with interstate commerce or a minimum amount of annual sales."  <u>Id.</u> at *2 n.2.  To recover overtime compensation, a plaintiff "must allege sufficient factual matter to state a plausible claim that [he] worked compensable overtime in a workweek longer than 40 hours."  <u>Lundy v. Catholic Health Sys. of Long Island Inc.</u>, 711 F.3d 106, 114 (2d Cir. 2013).  To recover spread-of-hours pay, he must also allege that she worked "more than ten hours per day . . . and [was] not paid an additional hour at the minimum wage rate for days in which [she] worked [ten] or more hours." <u>Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F. Supp. 2d 114, 123 (E.D.N.Y 2011).

---

Inc., No. 15 Civ. 10186 (ER) (DF), 2021 WL 3375615, at *15 (S.D.N.Y. May 17, 2021) ("The NYLL, however, with its six-year statute of limitations, would cover the entire period of Plaintiff's employment, without the Court's needing to reach the question of whether Plaintiff has adequately pleaded 'willfulness' under the FLSA, so as to be able to take advantage of the 'willfulness' exception to the statute's two-year limitations period."), <u>adopted by</u>, 2021 WL 2767152 (S.D.N.Y. July 2, 2021).

a.  **The employment relationship**

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  Courts afford the term employer "an expansive definition with 'striking breadth.'"  Mondragon v. Keff, No. 15 Civ. 2529 (JPO) (BCM), 2019 WL 2551536, at *7 (S.D.N.Y. May 31, 2019), adopted by, 2019 WL 2544666 (S.D.N.Y. June 20, 2019) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 US. 318, 326 (1992)).  Under the FLSA, "[a]n individual may simultaneously have multiple 'employers[,]'" such that "'all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA].'"  Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 421 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 791.2(a)).

To determine whether Defaulting Defendants were Nestor's employer for FLSA purposes, the Court must examine the "economic reality" of the working relationship.  Irizarry v. Catsimatidis, 722 F.3d 99, 104 (2d Cir. 2013).  Courts in the Second Circuit consider four non-exclusive factors to assess the "economic reality" of an alleged employment relationship, including "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id. at 105 (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 142 (2d Cir. 2008)).  This "inquiry is a totality-of-the-circumstances approach, so no one factor is dispositive[.]"  Tackie, 2014 WL 4626229, at *2.

Under the NYLL, the definition of "employer" is also broad, <u>see</u> NYLL § 190(3),[3] "and the crucial inquiry, in determining whether an employer-employee relationship exists, is the 'degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" <u>Mondragon</u>, 2019 WL 2551536, at *7 (quoting <u>Hart v. Rick's Cabaret Int'l, Inc.</u>, 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) ("<u>Hart I</u>")).  In the absence of a decision from the New York Court of Appeals answering "the question of whether the test for 'employer' status is the same under the FLSA and the NYLL," <u>Camara v. Kenner</u>, No. 16 Civ. 7078 (JGK), 2018 WL 1596195, at *7 (S.D.N.Y. Mar. 29, 2018), "[t]here is general support for giving FLSA and the [NYLL] consistent interpretations . . . [a]nd there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)."  <u>Hart I</u>, 967 F. Supp. 2d at 924 (internal citation omitted).  "Accordingly, courts in this District regularly apply the same tests to determine whether entities were joint employers under NYLL and the FLSA."  <u>Martin</u>, 273 F. Supp. 3d at 422.

Nestor alleges that Defaulting Defendants employed him as a sandwich maker at the Deli. (ECF Nos. 1 ¶¶ 1–4, 14, 16–17, 19).  He alleges that Seidi was an owner, manager, principal, or agent of the Deli, and that he "determine[d] the wages and compensation of the employees of Defendants, including [] Nestor, establishe[d] the schedules of the employees, maintain[ed] employee records, and ha[d] the authority to hire and fire employees."  (<u>Id.</u> ¶ 19; <u>see</u> <u>also</u> <u>id.</u> ¶¶ 22–25, 27–28).

---

[3] NYLL § 190(3) defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

By their default, Defendants have admitted their status as Nestor's employer.  See Suriel, 2022 WL 1750232, at *11; Rovio Entm't, 97 F. Supp. 3d at 545.  Because Defendants were Nestor's employer, they are jointly and severally liable under the FLSA and NYLL for any damages award.  See Fermin, 93 F. Supp. 3d at 37 (imposing joint and several liability on defaulting corporate and individual defendants); Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (imposing joint and several liability on defaulting corporate and individual defendants where allegations that individual defendant "was an owner, partner, or manager[,]" along with his default, established him as employer under the FLSA and the NYLL).

### b.  Interstate commerce

Under the FLSA, Nestor must establish that he or his employer was engaged in interstate commerce.  See Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 353 (E.D.N.Y. 2015) ("Engagement in interstate commerce, either by an employee or by the employer as a whole, is a prerequisite for liability for the FLSA's overtime requirement."); 29 U.S.C. § 207(a)(1) (stating that employees "engaged in commerce or in the production of goods for commerce" are entitled to overtime compensation at "one and one-half times the regular rate at which [they are] employed"); 29 U.S.C. § 203(s)(1)(A) (defining "Enterprise engaged in commerce").

Nestor has plausibly alleged that he "regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York[,]" and that Defaulting Defendants "were engaged in commerce or in an industry or activity affecting commerce." (ECF No. 1 ¶¶ 35, 66).  Nestor has also alleged that, in each year of his employment, Defendants "had a gross annual volume of sales of not less than $500,000 . . . ." (Id. ¶ 29).  In addition, the Deli is located in New York City, (see id. ¶¶ 2, 4, 16–17, 21), and "local business activities fall

within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." Cabrera v. Canela, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (quoting Archie v. Grand Cent. P'ship, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998)); see Fermin, 93 F. Supp. 3d at 33 ("[I]t [is] reasonable to infer that the myriad goods necessary to operate a [] restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State."). Accordingly, Nestor's allegations meet the threshold for enterprise liability under the FLSA, see 29 U.S.C. § 203(s)(1)(A), and he has satisfied the interstate commerce element for FLSA liability. See Suriel, 2022 WL 1750232, at *11; Mondragon, 2019 WL 2251536, at *9.

### c.  Unpaid minimum wages

The FLSA and NYLL require employers to pay employees a statutory minimum wage for the first 40 hours that employees work each week ("Straight Time Wages"). See 29 U.S.C. § 206(a)(1); 12 N.Y.C.R.R. § 146-1.2. The FLSA requires employers to pay employees at least the federal minimum wage for every hour worked, see 29 U.S.C. § 206, or the state minimum wage, if it is greater than the federal minimum wage. See 29 U.S.C. § 218(a). "[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct." Liu v. Jen Chu Fashion Corp., No. 00 Civ. 4221 (RJH) (AJP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004).

Under both the FLSA and NYLL, "all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." Hart v. Rick's Cabaret Int'l Inc., 60 F. Supp. 3d 447, 475 n.15 (S.D.N.Y. 2014) ("Hart II") (citing IBP, Inc. v. Alvarez, 546 U.S. 21, 37 (2005)). A meal break is "bona fide" when the employee is "completely relieved from duty for the purposes of

eating regular meals."  29 C.F.R. § 785.19(a); see Cazares v. 2898 Bagel & Bakery Corp., No. 18

Civ. 5953 (AJN) (DF), 2022 WL 1410677, at *19 n.12 (S.D.N.Y. Apr. 7, 2022), adopted by, 2022 WL

1406203 (S.D.N.Y. May 4, 2022) (quoting 29 C.F.R. § 785.19(a)).  Where the plaintiff "asserts that

[she] did not receive any meal or rest breaks[,]" "all of [her] time worked [will be] compensable."

Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), adopted by, No. 16

Civ. 8782 (AJN) (RWL), 2021 WL 2139441 (S.D.N.Y. May 26, 2021).

The NYLL requires certain employers to provide:  (1) a meal period of at least thirty

minutes for employees who work a shift of more than six hours over the time period

encompassing 11:00 a.m. to 2:00 p.m., within that period; (2) an additional twenty-minute meal

period between 5:00 p.m. and 7:00 p.m. for employees whose shift started before 11:00 a.m.

and continued later than 7:00 p.m.; and/or (3) a forty-five minute meal period at a time midway

between the beginning and end of the shift for employees whose shift lasts more than six (6)

hours and starts between 1:00 p.m. and 6:00 a.m.  See NYLL § 162(2)–(4).

Nestor alleges that Defaulting Defendants "never granted [him] any breaks or meal

periods of any kind."  (ECF No. 1 ¶ 45).  Accordingly, "all of [his] time worked [will be]

compensable."  Villanueva, 500 F. Supp. 3d at 235.

Employers may compensate tipped employees at a lower hourly rate by crediting a

portion of their tips against the minimum wage.  See 29 U.S.C. § 203(m)(2)(A)–(B); 12 N.Y.C.R.R.

§ 146-1.3(b); Andrade v. First Ave. Rest. Ltd., No. 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at

*4 (S.D.N.Y. June 3, 2016), adopted by, 2016 WL 3948101 (S.D.N.Y. July 19, 2016); see also Zhang

v. Hiro Sushi at Ollies, Inc., No. 17 Civ. 7066 (JPC), 2022 WL 2668263, at *8 (S.D.N.Y. July 11, 2022).

"To be eligible to take a tip credit, however, the employer must satisfy certain prerequisites."

Kim v. Kum Gang, Inc., No. 12 Civ. 6344 (MHD), 2015 WL 2222438, at *23 (S.D.N.Y. Mar. 19, 2015).  These prerequisites include the requirement that the employer notify the employee, before the employment begins, "of its intention to include tip income when calculating wages actually paid for minimum wages purposes." Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc., No. 08 Civ. 3725 (DC), 2010 WL 4159391, at *2 (S.D.N.Y. Sept. 30, 2010).  The employer bears the burden of proving that this notice was given.  See Reyes v. Café Cousina Rest. Inc., No. 18 Civ. 1873 (PAE) (DF), 2019 WL 5722475, at *5 (S.D.N.Y. Aug. 27, 2019).

The NYLL also allows an employer to pay tipped food service workers a lower minimum wage under certain conditions.  See NYLL § 652(4).  "An employer may receive the benefit of this tip credit only if the employer provides to each employee a statement with every payment of wages listing allowances claimed as part of the minimum wage and maintains and preserves for not less than six years weekly payroll records which shall show for each employee allowances claimed as part of the minimum wage[.]" Cao, 2010 WL 4159391, at *2 (quoting Padilla v. Manlapaz, 643 F. Supp. 2d 302, 309–10 (E.D.N.Y. 2009)) (internal quotation marks and alterations omitted); see 12 N.Y.C.R.R. §§ 146-1.3, 146-2.2.  Under both the FLSA and the NYLL, the notice must be sufficient to apprise the employee of the tip credit provision and the fact that the employer intends to take the credit as to the employee's wages.  See Café Cousina, 2019 WL 5722475, at *5; Salinas v. Starjem Rest. Corp., 123 F. Supp. 3d 442, 467 (S.D.N.Y. 2015) (finding generic FLSA posters to be insufficient notice).

The Court finds that Defaulting Defendants do not meet the requirements for taking a tip credit.  Nestor alleges, and Defaulting Defendants have admitted by their default, that they never notified him that his tips were included as an offset to his wages, nor did they account for tips in

any daily or weekly accounting of his wages.  (ECF Nos. 1 ¶¶ 60, 85; 103-4 ¶ 19).  Because Defaulting Defendants failed to meet the notice requirements of the FLSA and the NYLL, they are therefore not entitled to any tip credit against the minimum wage.  See Agureyev v. H.K. Second Ave. Rest., Inc., No. 17 Civ. 7336 (SLC), 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021); Schalaudek, 2017 WL 729544, at *6–7.

"Because [Defaulting] Defendants are not entitled to any tip credit, [they] were required to pay [Nestor] full minimum wage, rather than the lower minimum wage for tipped workers." Lopez v. Emerald Staffing Inc., No. 18 Civ. 2788 (SLC), 2020 WL 915821, at *9 (S.D.N.Y. Feb. 26, 2020) (citing Cao, 2010 WL 4159391, at *2).  Nestor admits that the Deli had "approximately five employees[,]" (ECF No. 103-4 ¶ 6), and therefore, the minimum-wage rate for small employers as set forth in NYLL § 652(1)(a)(ii) applies.  See Campos Marin v. J&B 693 Corp., No. 19 Civ. 00569 (JGK) (KHP), 2022 WL 377974, at *7 (S.D.N.Y. Jan. 21, 2022) (applying lower, small employer rate where plaintiff failed to allege employer had eleven or more employees); Reyes v. Lincoln Deli Groc. Corp., No. 17 Civ. 2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018) (same).  The Court's use of the lower minimum wage impacts its determination of whether Defaulting Defendants are liable for minimum and overtime wage violations, and the calculation of damages, discussed further below.

Although Nestor's Complaint and Damages Submission broadly contend that Defaulting Defendants failed to pay him the applicable hourly minimum wage, he does not precisely articulate during which periods he was paid less than the minimum wage.  (ECF Nos. 1 ¶¶ 50, 52, 61–62, 64–70, 75–79; 103 ¶¶ 31–37).  To the contrary, Nestor's own Calculation indicates that his regular hourly pay rate was at or above the statutory minimum wage rate.  (ECF No. 103-6 at

1 (reflecting regular hourly pay rates of $12.50 to 18.75)).  Only through the Court's review of the Calculation and performance of its own damages calculation, is it possible to discern whether Defaulting Defendants paid Nestor less than the required minimum wage.   Based on the information in the Complaint, the Nestor's Computation, and his Declaration, the Court finds that throughout his employment, he was paid at or above the applicable minimum wage, and, accordingly, is not entitled to recover any Straight Time Wages:

| Time Period | Nestor's Weekly Pay | Nestor's Hourly Rate (Weekly Pay/40) | Statutory Minimum Wage |
|---|---|---|---|
| 4/4/2013-12/30/2013 | $500 | $12.50 | $7.25 |
| 12/31/2013-7/31/2014 | $500 | $12.50 | $8.00 |
| 8/1/2014-10/31/2014 | $600 | $15.00 | $8.00 |
| 12/1/2017-12/30/2017 | $700 | $17.50 | $10.50 |
| 12/31/2017-2/28/2018 | $700 | $17.50 | $12.00 |
| 3/1/2018-12/30/2018 | $750 | $18.75 | $12.00 |
| 12/31/2018-2/28/2019 | $750 | $18.75 | $13.50 |

(ECF Nos. 1 ¶¶ 41–44; 103-4 ¶¶ 13–16).  Accordingly, the Court finds that Defaulting Defendants are not liable for any Straight Time Wages.

### d.  Unpaid overtime

Both the FLSA and the NYLL require an employer to pay an overtime rate of one and one-half times the employee's "regular rate" of pay.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2. To state an overtime claim, a plaintiff "must allege only that [he] worked compensable overtime in a workweek longer than forty hours, and that [he] was not properly compensated for that overtime."  Tackie, 2014 WL 4626229, at *3.

Nestor alleges that he regularly worked more than 40 hours per week, as much as 69 hours per week. (ECF Nos. 1 ¶¶ 38–39; 103-4 ¶¶ 10–11). He alleges that Defaulting Defendants failed to pay him an overtime premium for the hours he worked over 40 hours per week. (ECF No. 1 ¶¶ 9, 50, 71–74, 81–83; 103-4 ¶¶ 9–16). Thus, Nestor has adequately stated a claim for unpaid overtime wages under the FLSA and the NYLL. See Suriel, 2022 WL 1750232, at *13 (holding that plaintiff stated claim for overtime wages); Agureyev, 2021 WL 847977, at *7 (same); Mondragon, 2019 WL 2551536, at *9 (same).

### e. Spread-of-hours pay

Under the NYLL, employers must pay covered employees one extra hour of compensation, at the basic minimum wage rate, for each day on which they worked more than ten hours. 12 N.Y.C.R.R. § 142-2.4(a). Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." Id. § 142-2.18. "[T]he spread of hours regulations 'apply to all employees in restaurants . . . regardless of a given employee's regular rate of pay.'" Andrade, 2016 WL 3141567, at *4. An employee may recover spread-of-hours wages in addition to federal and state overtime wages. See Yang v. ACBL Corp., 427 F. Supp. 2d 327, 339–41 (S.D.N.Y. 2005).

Nestor attests in his Declaration that Defaulting Defendants "did not pay [him] an extra hour's wage at the minimum wage rate when [he] worked more than ten hours in a day." (ECF No. 103-4 ¶ 17). In the Complaint, however, Nestor did not assert a spread of hours claim, nor has he provided the dates on which he worked more than ten hours. (See generally ECF No. 1). Accordingly, the Court finds that Nestor has failed to provide a sufficient basis to recover spread-of-hours damages. See Suriel, 2022 WL 1750232, at *14 (recommending denial of spread-of-

hours damages where plaintiff alleged only that she "often worked shifts longer than ten []
hours" and failed to specify when she did so); Inga, 2021 WL 3624666, at *10 (same).

### f. Liquidated Damages

Under the FLSA, "a plaintiff who demonstrates that he was improperly denied either
minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages,
an 'additional equal amount as liquidated damages.'" Xochimitl v. Pita Grill of Hell's Kitchen, Inc.,
No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *15 (S.D.N.Y. Sept. 8, 2016) (quoting 29 U.S.C.
§ 216(b)), adopted by 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).  "[W]here the employer shows
that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with
objectively 'reasonable grounds' for believing that its acts or omissions did not violate the
FLSA[,]" the Court has the discretion to deny liquidated damages.  Barfield, 537 F.3d at 150
(quoting 29 U.S.C. § 260).  This burden is "a difficult one," Barfield, 537 F.3d at 150 (quoting
Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)), and where "defendants never
made this showing in light of their default, they have not rebutted the presumption in favor of a
liquidated damages award." Guaman v. J & C Top Fashion, Inc., No. 14 Civ. 8143 (GBD) (GWG),
2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016), adopted by, 2017 WL 111737 (S.D.N.Y. Jan. 11,
2017).  A plaintiff who "is entitled to liquidated damages under the FLSA, but has been awarded
wage and overtime damages pursuant to the NYLL because state law provided the greater relief"
is entitled to FLSA liquidated damages "based on 'the amount of actual damages that would have
been awarded had the federal minimum wage rate applied.'" Kernes v. Glob. Structures, LLC, No.
15 Civ. 659 (CM) (DF), 2016 WL 880199, at *4 (S.D.N.Y. Feb. 9, 2016) (quoting Angamarca v. Pita
Grill 7 Inc., No. 11 Civ. 7777 (JGK) (JLC), 2012 WL 3578781, at *7 (S.D.N.Y. Aug. 2, 2012)).

The NYLL also authorizes liquidated damages.  See Xochimitl, 2016 WL 4704917, at *15.
Effective November 24, 2009, "an employee was entitled to NYLL liquidated damages 'unless the
employer proves a good faith basis for believing that its underpayment of wages was in
compliance with the law.'"  Id. (quoting NYLL § 198(1-a)).  "Courts deem defendants' actions
willful where they have defaulted, see e.g., Angamarca, 2012 WL 3578781, at *8, and,
consequently, such defaulting defendants will have '[o]bviously . . . made no showing of 'good
faith.'"  Xochimitl, 2016 WL 4704917, at *15 (quoting Guaman, 2016 WL 791230, at *7).  Effective
April 9, 2011, the liquidated damages award under the NYLL is 100% of the amount of unpaid
wages.  NYLL §§ 198(1-a), 663(1).

The Second Circuit precludes a plaintiff from recovering liquidated damages under both
the FLSA and the NYLL.  See Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60
(2d Cir. 2016); Mondragon, 2019 WL 2551536, at *11.  A plaintiff should recover "under the
statute that provides the greatest amount of damages."  Almanzar v. 1342 St. Nicholas Ave. Rest.
Corp., No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *7 (S.D.N.Y. Nov. 7, 2016) (internal
citation omitted).  The NYLL allows for prejudgment interest in addition to liquidated damages,
see NYLL § 198(1-a), but the FLSA does not.  See Valdez v. H & S Rest. Operations, Inc., No. 14 Civ.
4701 (SLT) (MDG), 2016 WL 3079028, at *6 (E.D.N.Y. Mar. 29, 2016), adopted by 2016 WL
3087053 (E.D.N.Y. May 27, 2016).  The NYLL therefore provides greater relief.  See Mondragon,
2019 WL 2551536, at *11.

Having defaulted, Defaulting Defendants have not carried their burden of demonstrating
good faith under the NYLL, see Mondragon, 2019 WL 2551536, at *11, and therefore, Nestor is
entitled to liquidated damages equivalent to 100% of his unpaid wages.  See Schalaudek, 2017

WL 729544, at *10 (awarding liquidated damages of 100% of unpaid wages where defendants had defaulted).

### g.  Statutory wage notices and statements

"The [WTPA], which became effective April 9, 2011, required [Defendants] to provide [Nestor], at the time of hiring, with a notice containing, inter alia, the rate and frequency of [his] pay, NYLL § 195(1), and to furnish [him] with a written statement with each payment of wages, listing, inter alia, the dates covered by the payment, the regular rate of pay, the overtime rate, and the number of hours worked. NYLL § 195(3)." Mondragon, 2019 WL 2551536, at *12.  Nestor alleges that Defendants failed to provide him with a wage notice at the time of his hiring, and that they failed to furnish correct weekly wage statements, such that he is entitled to statutory penalties.  (ECF Nos. 1 ¶¶ 47–49, 55, 84–85; 103-4 ¶¶ 18–19).  Defaulting Defendants are again deemed to have admitted these allegations by their default, and therefore, the Court finds that Nestor is entitled to recover statutory damages under §§ 195(1) and 195(3).  See Suriel, 2022 WL 1750232, at *14.

*      *      *

In summary, the Court finds that the well-pleaded allegations in the Complaint and Nestor's Declaration establish Defaulting Defendants' liability for unpaid overtime wages, liquidated damages, and statutory wage notice and statement damages, but do not establish a claim for unpaid minimum Straight Time Wages or spread-of-hours damages.

### D.  Damages Calculation

No party has requested a hearing on the issue of damages, and Defaulting Defendants have not submitted any written materials.  Therefore, the Court has conducted its inquest based

solely on the materials in Nestor's Damages Submission.  See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012) ("[A] district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence."); Perez, 2019 WL 7403983, at *3; Fed. R. Civ. P. 55(b)(2).

### 1.  Evidentiary Basis

The Court must also determine whether Nestor has provided sufficient evidence to support his claim for damages.  See Transatlantic Marine, 109 F.3d at 111; Bleecker v. Zetian Sys., Inc., No. 12 Civ. 2151 (DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  In his Damages Submission, Nestor filed his Declaration attesting to the dates and circumstances of his employment.  (ECF No. 103-4).  Despite warnings, Defaulting Defendants have not responded to the Court's orders or the Damages Submission or provided any contrary evidence.  (ECF Nos. 86; 90; 105).  The Court finds that Nestor has met his evidentiary burden of proving damages, and that an in-person hearing is unnecessary because his Damages Submission, combined with Defaulting Defendants' admissions resulting from their default, constitute a sufficient basis from which to evaluate the fairness of his damages request.  See Fustok, 873 F.2d at 40; see also Bos. Sci. Corp. v. N.Y. Ctr. for Specialty Surgery, No. 14 Civ. 6170 (RRM), 2015 WL 13227994, at *3 (E.D.N.Y. Aug. 31, 2015) (same), adopted by, 2016 WL 8711378 (E.D.N.Y. Jan. 29, 2016).

### 2.  Overtime Wages

The Court calculates appropriate overtime wages "by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage)

by one and one-half[,]" then by multiplying that rate "by the number of hours in excess of forty hours the employee worked each week."  Rosendo v. Everbrighten Inc., No. 13 Civ. 7256 (JGK) (FM), 2015 WL 1600057, at *4 (S.D.N.Y. Apr. 7, 2015), adopted by, 2015 WL 4557147 (S.D.N.Y. July 28, 2015).

　　　Having reviewed Nestor's Computation, the Court finds that Nestor should be awarded overtime wages in the amount below:

| Time Period | | # Weeks | Weekly Pay | Nestor's Hourly Rate (Weekly Pay/40) | Applicable Overtime Rate (Nestor's Hourly Rate *1.5) | Unpaid Overtime Hours | Overtime Wages Awarded |
|---|---|---|---|---|---|---|---|
| Start | End | | | | | | |
| 4/4/2013 | 12/30/2013 | 39 | $500 | $12.50 | $18.75 | 20*39 = 780 | $14,625.00 |
| 12/31/2013 | 7/31/2014 | 30 | $500 | $12.50 | $18.75 | 20*30 = 600 | $11,250.00 |
| 8/1/2014 | 10/31/2014 | 13 | $600 | $15.00 | $22.50 | 20*13 = 260 | $5,850.00 |
| 12/1/2017 | 12/30/2017 | 4 | $700 | $17.50 | $26.25 | 20*4 = 80 | $2,100.00 |
| 12/31/2017 | 2/28/2018 | 8 | $700 | $17.50 | $26.25 | 20*8 = 160 | $4,200.00 |
| 3/1/2018 | 12/30/2018 | 43 | $750 | $18.75 | $28.13 | 29*43 = 1,247 | $35,078.11 |
| 12/31/2018 | 2/28/2019 | 8 | $750 | $18.75 | $28.13 | 29*8 = 232 | $6,526.16 |
| TOTAL | | | | | | | $79,629.27 |

### 3.  Liquidated Damages

Liquidated damages are calculated as the "one hundred percent of the total amount of wages found to be due . . ."  NYLL § 198(1-a).  Here, that is the sum of Nestor's unpaid overtime wages.  See Agureyev, 2021 WL 847977, at *10.  The Court awards Nestor liquidated damages in the amount of $79,629.27.

### 4. **WTPA Damages**

As set forth above, Nestor has shown that Defaulting Defendants are liable for statutory damages under the WTPA.  (See § III.C.3.g, supra).  Violations of § 195(1) result in damages of $50 per workday, up to a maximum of $5,000, which is reached after 100 days.  See NYLL § 198(1-b).  Violations of § 195(3) result in damages of $250 per workday, up to a maximum of $5,000, which is reached after 20 days.  Id. § 198(1-d).  Because Defaulting Defendants failed to provide Nestor the required written wage notices or statements for the duration of his employment, which lasted well over the period needed to reach the statutory maximum damages, the Court awards Nestor the maximum statutory damages of $5,000 for each claim, for a total of $10,000.00.

### 5. **Prejudgment Interest**

In the Complaint, Nestor sought prejudgment interest on his compensatory damages, but in Nestor's Computation, he sets forth no calculation of pre-judgment interest.  (Compare ECF No. 1 at 17 ¶ o with ECF No. 103-6).  Accordingly, the Court finds that Nestor has waived his claim for pre-judgment interest.

### 6. **Post-judgment Interest**

Nestor also seeks post-judgment interest.  (ECF No. 1 at 17 ¶ o).  The applicable federal statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court . . . [and] calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment."  28 U.S.C. § 1961(a).  The Second Circuit has explained that an award of post-

judgment interest is mandatory.  See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008); see also Suriel, 2022 WL 1750232, at *17 (awarding post-judgment interest).  Given the mandatory nature of post-judgment interest, the Court will award Nestor post-judgment interest in an amount consistent with 28 U.S.C. § 1961.

### 7. Attorneys' Fees

Nestor seeks an award of attorneys' fees in the amount of $15,880.00.  (ECF No. 103 ¶ 47). The NYLL permits a successful plaintiff to recover reasonable attorneys' fees.  NYLL §§ 198, 663. "Whether an attorneys' fee award is reasonable is within the discretion of the court."  De Jesus v. Sea Crest Diner-Rest., No. 17 Civ. 275 (ADS) (SIL), 2018 WL 3742778, at *11 (E.D.N.Y. May 7, 2018) (citing De Jesus Galindo v. BLL Rest. Corp., No. 15 Civ. 5885 (HBP), 2018 WL 1684412, at *3 (S.D.N.Y. Apr. 6, 2018)).  To determine a "presumptively reasonable fee," the Court multiples the hours counsel reasonably spent on the litigation by a reasonable hourly rate.  Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  "The presumptively reasonable fee boils down to what a reasonable paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth. 575 F.3d 170, 174 (2d Cir. 2009) (internal citations omitted).

### a. Reasonable Hourly Rate

Nestor was represented by Michael Faillace, Esq. ("Faillace"), Joshua Androphy ("Androphy"), Bryan D. Robinson ("Robinson"), Catalino Sojo ("Sojo"), and paralegals at the firm of Michael Faillace & Associates, P.C. (the "Firm").  (ECF Nos. 103 ¶ 51; 103-7).  Faillace recorded

his time at a rate of $400.00 per hour, Androphy at $400 per hour, Robinson at $300 per hour,

Sojo at $350.00 per hour, and the paralegals at $125.00 per hour.  (ECF Nos. 103 ¶ 51; 103-7).[4]

To determine whether an hourly rate is reasonable, the Second Circuit has instructed

district courts to "apply the prevailing rate within the district for similar services by lawyers of

comparable experience and skill."  Galeana v. Lemongrass on B'way Corp., 120 F. Supp. 3d 306,

323 (S.D.N.Y. 2014) (citing Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).  A court may

also adjust the hourly rate to account for case-specific variables such as:

> [i] the time and labor required; [ii] the novelty and difficulty of the
> questions; [iii] the skill requisite to perform the legal service
> properly; [iv] the preclusion of employment by the attorney due to
> acceptance of the case; [v] the customary fee; [vi] whether the fee
> is fixed or contingent; [vii] time limitations imposed by the client or
> the circumstances; [viii] the amount involved and the results
> obtained; [ix] the experience, reputation, and ability of the
> attorneys; [x] the "undesirability" of the case; [xi] the nature and
> length of the professional relationship with the client; and [xii]
> awards in similar cases.

Gamero v. Koodo Sushi Corp., 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018) (quoting Hensley v.

Eckerhart, 461 U.S. 424, 430 n.3 (1983)).

In this district, courts generally award experienced wage-and-hour attorneys between

$300.00 to $400.00 per hour.  See Surdu v. Madison Glob., LLC, No. 15 Civ. 6567 (HBP), 2018 WL

1474379, at *10 (S.D.N.Y. Mar. 23, 2018) (collecting cases regarding litigators with one or more

decades of experience); see also Pastor v. Alice Cleaners, Inc., No. 16 Civ. 7264 (JLC), 2017 WL

---

[4] The Firm's billing records also reflect time expended by "JTB," who recorded time at a rate of $375.00 per hour.  (See ECF No. 103-7 at 4–7).  Neither the Sojo Declaration nor the billing records identify who JTB is nor provide any details about this person's experience as would allow the Court to evaluate the reasonableness of the requested hourly rate.  See Top Jet Enterprises, Ltd. v. Kulowiec, No. 21 MC 789 (RA) (KHP), 2022 WL 1184245, at *3 (S.D.N.Y. Apr. 21, 2022) (noting failure to provide sufficient information to evaluate attorneys' requested hourly rates).  The Court deems Nestor not to be seeking any fees with respect to "JTB", and, accordingly, awards none.

5625556, at *7–8 (S.D.N.Y. Nov. 21, 2017) (noting fees between $250 and $450 for experienced

litigators in wage-and-hour cases in this district); but see Williams v. Epic Sec. Corp., No. 15 Civ.

05610 (SDA), 2019 WL 1322384, at *3 (S.D.N.Y. Mar. 25, 2019) (awarding $600 per hour to lead

attorney with 32 years of experience and $350 per hour to junior partner with 11 years of non-

wage-and-hour experience).

 As to Faillace, Nestor touts his qualifications and experience in support of a billing rate of

$400.00.  (ECF Nos. 103 ¶ 51(a); 103-7).  Nestors' Damages Submission does not, however, reflect

Faillace's subsequent suspension

> from practice for two years by the Grievance Committee of the
> Southern District of New York on November 9, 2021, as a result of
> repeatedly taking fees from settlements in excess of the amounts
> awarded to him by court order (effectively stealing from his clients'
> recoveries); refusing to follow client directions as to the amounts
> they wanted to settle the case; and of misrepresenting facts
> relating to these practices to the Southern District Committee.

Garcia Lazaro v. Best Fish Mkt. Corp., No. 21 Civ. 5305 (BMC), 2022 WL 280768, at *2 (E.D.N.Y.

Jan. 29, 2022).  The Court granted Faillace's motion to withdraw as Nestor's counsel, (ECF

Nos. 91; 93), and the Firm has now been reconstituted, at the same address, as "CSM Legal P.C.,"

the initials of which may be reflective of Sojo's prominent role in representing the Firm's former

clients.  See Garcia Lazaro, 2022 WL 280768, at *2 (recognizing reconstitution of firm using initials

of current attorneys).

 Faillace billed 10.9 hours to Nestor's matter.  (ECF No. 103-7).  The Second Circuit has

instructed that, when determining the reasonableness of a claimed hourly rate, a court should

consider "what a reasonable, paying client would be willing to pay[.]"  Arbor Hill Concerned

Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182, 184

(2d Cir. 2008).  The Court agrees with the Honorable Brian M. Cogan's conclusion that "[f]ew 'reasonable, paying clients' are going to retain an attorney who is going to be suspended for, among other things, stealing settlements from clients."  Garcia Lazaro, 2022 WL 280768, at *3. In light of Faillace's suspension, the Court finds that any recovery for his time spent on Nestor's case would not be reasonable.  Accordingly, the Court awards no fees with respect to Faillace.

Androphy is a 2005 graduate of Columbia Law School who joined the Firm in 2012, and at the time of this action, had been litigating employment claims in state and federal court for over seven years.  (ECF No. 103 ¶ 51(b)).  Given this level of experience, other courts in this District have recently awarded Androphy a rate of $350.00.  See Galeana v. Mahasan Inc., No. 14 Civ. 3625 (VSB) (KNF), 2021 WL 8776758, at *8 (S.D.N.Y. Dec. 21, 2021) (reducing Androphy's rate from $400 to $350 "in line with th[e] rate[] found reasonable in recent decisions in this judicial district"), adopted by 2022 WL 1684130 (S.D.N.Y. May, 26, 2022); Diaz-Caballero v. Midtown Catch Corp., No. 18 Civ. 4672, 2020 WL 8880944, at *2 (S.D.N.Y. Apr. 15, 2020) (same). Accordingly, the Court reduces Androphy's hourly rate to $350.00.

Robinson and Sojo have been practicing law for less than five years.  (ECF No. 103 ¶ 51(c, d)).  Given this level of experience, other courts in this District have recently awarded Sojo a rate of $225.00.  See Tarax v. Blossom W. Inc., No. 19 Civ. 6228 (JSR), 2022 WL 2132749, at *2 (S.D.N.Y. June 14, 2022) (reducing Sojo's hourly rate from $350 to $225); Espinoza v. B'way Pizza & Rest. Corp., No. 17 Civ. 7995 (RA) (KHP), 2021 WL 7903991, at *12 (S.D.N.Y. Nov. 18, 2021) (same), adopted by, 2022 WL 977068 (S.D.N.Y. Mar. 31, 2022).  Accordingly, the Court awards Robinson and Sojo a rate of $225.00 per hour, which is consistent with their level of experience and rates awarded in this District.

For paralegals, hourly rates of $100.00 to $150.00 are typical for awards in this District. See Inga, 2021 WL 3624666, at *14 (collecting cases).  Accordingly, the Court finds that the requested hourly rate of $100.00 is reasonable.

### b. Reasonable Hours Expended

Androphy expended seven (7) hours, Robinson three and three-tenths (3.3) hours, Sojo one (1) hour, and the paralegals 17.2 hours on Nestor's case.  (ECF No. 103-7).  To determine the reasonable number of hours required by a case, the critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).  Courts must perform "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly." Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc., No. 14 Civ. 6911 (VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016), adopted by, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016) (quoting Hensley, 461 U.S. at 434).

The Court has examined the contemporaneous billing records for Nestor's case, including the hours expended, dates of work, and brief descriptions of the work the attorneys and paralegals performed.  (See generally ECF No. 103-7).  The Court finds that the hours they each expended were reasonable and not "excessive, redundant, or otherwise unnecessary[.]" Hensley, 461 U.S. at 434.

Accordingly, the Court awards attorneys' fees in the amount below:

| Timekeeper | Requested Rate | Awarded Rate | Reasonable Hours | Fees Awarded |
|---|---|---|---|---|
| Androphy | $400.00 | $350.00 | 7.0 | $2,450.00 |
| Robinson | $300.00 | $225.00 | 3.3 | $742.50 |
| Sojo | $350.00 | $225.00 | 1.0 | $225.00 |
| Paralegal | $125.00 | $100.00 | 17.2 | $1,720.00 |
| **TOTAL** | | | **28.5** | **$5,137.50** |

   **8.** **Costs**

   Nestor requests costs in the amount of $842.40 comprised of the court filing fee ($400.00)

and service costs ($442.40).  (ECF Nos. 103 ¶ 47; 103-7 at 7).  An employee who prevails in a

wage-and-hour action is entitled to recover costs.  See 29 U.S.C. § 216(b); NYLL § 663(1).

Recoverable costs are "those reasonable out-of-pocket expenses incurred by attorneys and

ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763

(2d Cir. 1998) (internal citation omitted).  In support of his requests for costs, however, Nestor

has only submitted the Firm's billing record, which contains line items for the court filing fee and

service costs, but did not "submit invoices or receipts to substantiate the claimed amount[s]."

Khotovitskaya v. Shimunov, No. 18 Civ. 7303 (NGG) (CLP), 2021 WL 868781, at *2 (E.D.N.Y. Mar. 9,

2021) (denying costs where party failed to submit documentation substantiating the amounts

reflected in attorney billing records); see Suriel, 2022 WL 1750232, at *18 (declining to award

costs for unsubstantiated amounts listed only in attorney billing record); Sanchez, 2018 WL

4502008, at *17 (noting that adequate substantiation is required for award of costs).  The Court

may, however, take judicial notice of the filing fee reflected on the docket as support for an award

of that cost.  (ECF No. 1).  See Inga, 2021 WL 3624666, at *15 (collecting cases).  Accordingly, the

Court awards Nestor costs only in the amount of $400.00.

9. **Additional Damages**

Nestor also requests that "the judgment provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment [] automatically increase by fifteen percent" pursuant to NYLL § 198(4).  (ECF No. 103 ¶ 52).  Nestor's request is in accordance with the provisions of the NYLL, and is therefore granted. See Dominguez v. Metro. Wireless Anandpur Inc., No. 21 Civ. 2240 (PAE) (KHP), 2022 WL 1164709, at *9 (S.D.N.Y. Jan. 27, 2022) (awarding automatic 15% increase in amount of judgment if conditions of NYLL § 198(4) exist), adopted by, 2022 WL 421126, at *2 (S.D.N.Y. Feb. 11, 2022); Mahasan, 2021 WL 8776758, at *9 (same)

## IV. CONCLUSION

For the reasons set forth above, the Court awards Victor:

(1) $169,258.54 in damages against Defendants, comprised of:  (i) $79,629.27 in unpaid overtime wages; (ii) $79,629.27 in liquidated damages; and (iii) $10,000.00 in statutory damages;

(2) post-judgment interest pursuant to 28 U.S.C. § 1961;

(3) attorneys' fees in the amount of $5,137.50;

(4) costs in the amount of $400.00; and

(5) pursuant to NYLL § 198(4), if any amounts remain unpaid on the expiration of 90 days following issuance of judgment, or 90 days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by 15%.

Victor shall promptly serve a copy of this Opinion & Order on Defendants and file proof of service on the docket by **Monday, August 29, 2022**.

Dated:          New York, New York
                August 25, 2022

                                        SO ORDERED.

                                        _____
                                        **SARAH L. CAVE**
                                        **United States Magistrate Judge**